# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MR. SALVADOR HERRERA CRUZ<br><br>Plaintiff<br><br>v.<br><br>BIO-MEDICAL APPLICATIONS OF ARECIBO, INC; RB FUELING LIMITED, LLC; MATHEW BARGO; DR. SUSONI HEALTH COMMUNITY CORP; METRO PAVIA HEALTH SYSTEM, INC.; UNIVERSAL GROUP, INC. dba UNIVERSAL INSURANCE COMPANY; SCOTT RENO; SUPERIOR DISASTER RELIEF; SERVICE FACILITIES MANAGEMENT AND MAINTENANCE, INC.;JOHN DOE AND RICHARD DOE; AND XYZ INSURANCE COMPANY<br><br>Defendants | CIVIL NO. 19-cv-01582 (MDM)<br><br><br>Torts; Damages; Personal Injury Diversity Plaintiff demands Trial by Jury |

## CO-DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE COURT:**

**COMES NOW,** Co-Defendant, Metro Pavía Health Systems, Inc. ("MPHS"), through the undersigned attorneys, and very respectfully moves the Court for Summary Judgment in favor of Co-Defendant, MPHS, and show in support the following grounds:

## I.   PROCEDURAL HISTORY TO SUBSTANTIATE THE FILING OF A SECOND MOTION FOR SUMMARY JUDGMENT

1.      On October 24, 2019, MPHS initially moved for Summary Judgment in the captioned case.[1] The Request for Summary Judgment was presented because MPHS

---

[1] See Docket #55.

should not be named co-defendants in this litigation. Mainly because MPHS had a Consulting & Counseling Agreement with co-defendant, Hospital Dr. Susoni in Arecibo (where the accident with a fixed ladder occurred) and MPHS did not have a role of advising Hospital Susoni as to the installation of a fixed ladder in the scene of the accident. Furthermore, MPHS is a covered entity in the insurance policy of Co-defendant Hospital Dr. Susoni issued by Universal Insurance. The allegations against MPHS in the Complaint, First Amended Complaint and Second Amended Complaint were merely conclusory allegations riddled with speculations as to MPHS' negligent conduct against the plaintiff and therefore it fails short of the pleading standard mandated by Ashcroft v. Iqbal, 556 U.S. 662, and Bell Atlantic vs. Twombly, 550 U.S. 544, 570.

2.      On February 24, 2020, Plaintiff filed a Second Amended Complaint to include as new Co-Defendants Universal Insurance Company (on behalf of MPHS); Scott Reno, Superior Disaster Relief, LLC and Service Facilities Management and Maintenance, Inc.[2]

3.      The Second Amended Complaint (DKT #88) did not alter the substance or the factual allegations against MPHS; it added new co-defendants.

4.      On March 3, 2020, the parties met in the Chambers of U.S. Magistrate, Hon. Marshall Morgan, for a Status/Settlement/Scheduling Conference and "…*spent a considerable amount of time explaining to the Court the strengths and weakness of their respective cases.*" [3]

5.      During said Status/Scheduling and Settlement Conference, MPHS reiterated the merits of its Summary Judgment and argued that the allegations against

---

[2] See Docket #88.
[3] Quoting Minutes from Hon. Marshall Morgan at Docket # 91.

MPHS failed to comply with the federal pleading standard of <u>Ashcroft v. Iqbal</u>, 129 S.Ct 1937 and <u>Bell Atlantic Corporation v. Twombly</u>, 550 *U.S. 544*. MPHS further argued that the Court must separate the pleadings of facts from the pleading of conclusion in this case to uncover that the mere presence of MPHS is unwarranted and that it would launch MPHS into an expensive, yet unnecessary litigation.

6.      After the Status/Settlement/Scheduling Conference, all the parties were active in seeking a settlement of the case and had voluntarily agreed to cease the filing of motions or require compliance as to discovery and pleading issues until May 18th.

7.      Nevertheless, since the time provided to Answer a Complaint under FRCP 12 (a)(1)(A)(i) had elapsed, and provided that the Court had not ruled on the Summary Judgment filed by MPHS on October 24, 2019, and in order to avoid an entry of default, on April 15, 2020 MPHS proceeded accordingly and filed its Answer to the Second Amended Complaint.[4]

8.      MPHS never withdrew its request for Summary Judgment nor did it renounce it by procedurally filing an Answer to the Second Amended Complaint. Notwithstanding the foregoing, on May 22, 2020, the Court issued the following Order:

> **"ORDER: In light of the filing of plaintiff's Amended complaint (Docket No. 88) and defendant's Answer thereto (Docket No. 97,) the defendant's [55] Motion for summary judgment is Denied without prejudice. The defendant may re-file any dispositive motion(s) in due course. Signed by US Magistrate Judge Marshal D. Morgan. (GDM)"**

9.      The premise of the Court Order is that, since MPHS submitted an Answer to the Second Amended Complaint, it somehow turned moot the Motion for Summary

---

[4] Note that on April 14, 2020, a day before the filing by MPHS of the Answer to the Amended Complaint, the plaintiff was already requesting entry of Default against other co-defendant.

Judgment that was filed attacking the original pleading. Consequently, MPHS files this Second Motion for Summary Judgment as follows:

## II.      INTRODUCTION

1.      On June 14, 2019, Plaintiff Salvador Herrera filed a Complaint in the instant case against multiple parties, including Metro Pavia Health System Inc., alleging damages, based upon negligence, acts or omissions that resulted in physical injuries. On July 12, 2019, Plaintiff filed First Amended Complaint. Plaintiff alleges he fell from a fixed ladder at Pavia Arecibo Hospital premises, while providing services as an independent contractor for RB Fueling Limited, LLC to Fresenius diesel tanks. On February 24, 2020, Plaintiff filed a Second Amended Complaint to include as new Co-defendants Universal Insurance Company (on behalf of MPHS); Scott Reno, Superior Disaster Relief, LLC and Service Facilities Management and Maintenance, Inc. **[See Docket 12 First Amended Complaint and Docket #88 for the Second Amended Complaint].**

2.      The Amended Complaint and the Second Amended Complaint, far from making factual claims against MPHS, merely recites conclusory allegations in an attempt to establish that MPHS must somehow be held accountable for the plaintiff's complaint against Hospital Dr. Susoni in Arecibo. Plaintiff essentially alleges that MPHS provided consulting and advisory services as an independent contractor of Pavia Arecibo Hospital, and for that reason is jointly and severally liable for Plaintiff's damages. Furthermore, in the Second Amended Complaint it recites as follows: "*Metro Pavia Health failed to provide advisory and consultant services for maintenance and physical plant for the Susoni Health's as its allowed Dr. Susoni to operates in a dangerous condition.*"   It further avers that somehow, MPHS, as a contractor of Hospital Dr. Susoni in Arecibo, had a legal obligation *"to maintain and/or warn and/or report and or provide services in Susoni*

Health's premises with code-compliant access equipment, as the fixed ladder provided has a missed and/or unattached and/or separated grab-rail component, that is short of being connected to the platform and/or a missing safety cage; the ladder did not provide a continuous railing for the ladder which according to building and safety Code, should extend to the top at least forty-two (42) inches above the landing platform." **[See Docket 12, First Amended Complaint, page 19, 20 and 21 and Docket 88, Second Amended Complaint, paragraph 34 and 81.]**

3.      The evidence attached to this Second Motion for Summary Judgment and the applicable law confirms that MPHS is not, and cannot, be liable to the Plaintiff for the alleged damages. MPHS is a corporation independent of that owner, operator and administrator of Pavia Arecibo Hospital. **[Statement of Uncontested Facts ("SUF") 13]** MPHS as an independent contractor, subscribed a Counseling and Consulting Services Agreement with Dr. Susoni Health Community Services d/b/a Pavia Arecibo Hospital. **[SUF 4]** The nature of the contract is one of advisory, it is firmly established that the contract does not constitute a delegation of the Hospital's functions to MPHS. **[SUF 5]** It is at the Hospital's sole discretion to accept, reject in whole or in part the recommendations provided under the Advisory Contract. **[SUF 6]** Furthermore, Pavía Arecibo Hospital never required or request MPHS an assessment regarding the fixed ladder.

4.      MPHS moves the Court to grant Summary Judgment under the Federal Rules of Civil Procedure 56 (a), because there is no genuine issue as to any material fact regarding that MPHS is not liable to Plaintiff and the Complaint fails to state a claim against MPHS upon which a relief can be granted. Therefore, it is requested that all claims against MPHS be dismissed.

### III.    STANDARD OF REVIEW

**A. SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure states that it is suitable to issue summary judgment when "*the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" Fed.R.Civ.P. 56(c); Estades-Negroni v. The Associates, 377 F.3d 58 (1st Cir. 2004). Calero-Cerezo v. U.S. Department of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case. Calero-Cerezo, 355 F.3d at 19 (citing 477 U.S. 242, 248-250 (1986)). Rule 56 (b) provides that a party against whom a claim is asserted may file a motion for summary judgment at any time until 30 days after the close of all discovery.

When analyzing a motion for summary judgment, it is incumbent upon the court to determine, as a threshold matter, whether there exists an issue of material fact requiring trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2511 (1986). Once the moving party has presented evidence in support of its motion for summary judgment, "the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." Woodward v. Emulex Corp., 714 F.3d 632, 634 (1st Cir. 2013) (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 158 (1st Cir.1998)).

Faced with a defendant's motion for summary judgment, a plaintiff must come forward with some evidence showing a genuine dispute of material fact if he wants to get

in front of a jury. A plaintiff's failure to produce any evidentiary proof concerning one of the essential elements of his claim is grounds for summary judgment. Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 221 (1st Cir. 2013) (Citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–323 (1986).  A district court evaluates the facts of a motion for summary judgment in the light most favorable to the nonmoving party. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). Summary Judgment is warranted only if the record discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "*This standard is favorable to the nonmoving party, but it does not give him a free pass to trial.*" Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "*To be genuine, a factual dispute must be built on a solid foundation — a foundation constructed from materials of evidentiary quality.*" Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013); Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).

Summary Judgment is appropriate where the non-moving party rests solely upon "*conclusory allegations, improbable inferences and unsupported speculation.*" Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir. 1996). "*Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative"* will not defeat a summary judgment motion that complies with Local Rule 56 and Fed. R. Civ. P. 56. Rogan v. City of Boston, 267 F. 3d 24, 27(1st Cir. 2001). "*Brash conjectures coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment.*" Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993).  "*The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly*

*supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.*" Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32.

*It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared.*" Calero-Cerezo, 355 F.3d 19. (citing Parrilla-Burgos v. Hernández-Rivera, 108 F.3d 445, 448 (1st Cir. 1997)). It is well-settled that "*the mere existence of a scintilla of evidence*" is insufficient to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). It is therefore necessary that "*a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'*" Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); J. Moore, Moore's Federal Practice, 3rd ed., Ed. Mathew Bender, Sec. 56.11[4], p. 56-130. "*The device allows courts and litigants to avoid full-blown trial in unwinnable cases, thus conserving the parties' time and money, and permitting the courts to husband scarce judicial resources.*" McCarthy v. Northwestern Airlines, Inc., 56 F.3d 313, (1st Cir. 1994).

**B. Claims for Tort, Damages**

The general source of law governing liability for negligence is Art. 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. Article 1802 provides for a cause of action stemming from an individual's negligent acts. Isla Nena Air Services, Inc. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st Cir. 2006). The statute states in its pertinent part that "*a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.*" P.R. Laws Ann. tit. 31, § 5141. A claim under Article 1802 requires that the plaintiff prove three elements: "*(1) a negligent act or*

*omission, (2) damages, and (3) a causal relationship between them.*" Acevedo–Reinoso v. Iberia Líneas Aéreas de España S.A., 449 F.3d 7, 15 (1st Cir. 2006) (quoting Irvine, IRG v. Murad Skin Research Labs., Inc., 194 F.3d 313, 321–22 (1st Cir. 1999)).  When the first element is based on an omission, the defendant must have had a duty to act. Rodriguez–Quiñones v. Jiménez & Ruiz, S.E., 402 F.3d 251, 254–55 (1st Cir. 2005). Failure to establish a duty of care is fatal to a cause of action pursuant to Article 1802. See De Jesús Adorno v. Browning Ferris Indus., 992 F.Supp. 121, 123 (D.P.R. 1998) ("*As a simple matter of tort law, if BFI had no duty to repair the hole, it cannot be held liable for its failure to do so.")*. Furthermore, liability will only arise under the failure to act if the damages complained of were reasonably foreseeable to the defendant. Irvine, 194 F.3d at 321–22. Finally, "in order for liability to attach, the negligent act must be the 'adequate cause' of the harm." Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 7 n. 5 (1st Cir. 1998). Adequate cause is a concept similar to proximate cause. Id.

Negligence has been defined by the Commonwealth Courts as the failure to exercise due diligence to avoid foreseeable risks. Jiménez v. Peregrina, 112 D.P.R. 700 (1982). In particular, claims based on allegedly dangerous conditions on commercial property ("premises liability claims") require a showing that the defendant knew of or should have foreseen the risks created by the condition.  When it comes to business establishments, the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage. However, liability is only imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed. In other words, a

plaintiff must prove that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage." <u>Torres v. Kmart Corp.</u>, 233 F. Supp. 2d 273, 278 (D.P.R. 2002). Claims arising from allegedly dangerous properties may, alternatively, take the form of a defective design (or negligent design) case. The essential elements of a negligent design case are the same as other tort claims: injury, breach of duty, and proximate cause. However, in a design case, the plaintiff also *"bears the burden of establishing the applicable standard of care,"* <u>Prado Alvarez v. R.J. Reynolds Tobacco Co.</u>, 313 F.Supp.2d 61, 73 (D.P.R. 2004), aff'd, 405 F.3d 36 (1st Cir. 2005). Whereas a typical tort claim involves the generic "*reasonably prudent person*" standard of care and requires the plaintiff to present no evidence about the defendant's duty, a plaintiff in a design case must present evidence as to the specific duty or standard of care applicable to the design of the product or property at issue.

## IV.     LEGAL ARGUMENT

### A. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST METRO PAVIA HEALTH SYSTEM UPON WHICH A RELIEF CAN BE GRANTED

In the present case, there is no basis for a finding of liability under Article 1802 or Puerto Rico Civil Code against MPHS. Plaintiff impinges negligence against MPHS based merely on conclusory allegations and unsupported speculation. Under FRCP, Rule 8 (a)(2), a Complaint must contain a short and plain statement of a claim showing that the pleader is entitled to relief. However, our highest Court has found that Rule 8 requires the non-moving party to show a plausible factual allegation, accepted as true, to "*state a claim to relief that is plausible on its face,*" <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570. A claim has facial plausibility when the pleaded factual content allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The prevailing federal pleading standard is that "*while a complaint….does not need*

detailed factual allegations, a plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formulaic recitations of the elements of a cause of action." Id. at 555.

Furthermore, Justice Kennedy, delivering the majority opinion in Ashcroft v. Iqbal, 556 U.S. 662, elaborated on the Twombly decision and stated that the term "plausible" as used in Twombly, "*turns not on whether the alleged misconducts is unlikely, but on whether the complaint contains sufficient non conclusory factual allegations to support a reasonable inference that the conduct occurred*."

Plaintiff alleges in his Second Amended Complaint that MPHS is liable: "*as the person who acts as a contractor or subcontractor in the facility where the damages occurred for its acts and or negligent omissions, allowing a dangerous condition in its owned premises, and or for a breach of duty to provide a safe commercial facility to invitees and or servicemen of the facility. [Docket 88, Second Amended Complaint, page 19, paragraph 79]; did not provide a fixed ladder with side rails that extend continuously connected to the top level or landing platform of the ladder, [Docket 88, Second Amended Complaint, page 20, paragraph 82]; that it "failed to warn Plaintiff about the dangerous conditions existing in its premises or where it provides its services, specifically, the hazardous fixed-ladder, which is part of the physical plant of Susoni Health's premises" negligently operated or allow Susoni Health's premises to be operated in violation to construction and building codes [Docket 88, Second Amended Complaint, page 20, paragraph 83) Metro Pavia Health failed to provide a safe working zone to its invitees and contractors like Mr. Herrera*; [*Docket 18, Second Amended Complaint, page 21, paragraph 84]; Metro Pavia Health failed to warn Plaintiff about the dangerous conditions existing in its premises or where it provides its services,*

specifically, the hazardous fixed-ladder, which is part of the physical plant of Susoni Health's premises; *[Docket 88, Second Amended Complaint, page 20, paragraph 85]*; Metro Pavia Health failed to activate an emergency protocol despite the injuries suffered by Plaintiff  **[See Docket 88, Second Amended Complaint, page 21, paragraph 84]**; failed to provide Mr. Herrera with a fall prevention program and safety instructions or protocol *[Docket 88, Second Amended Complaint, page 21, paragraph 86]*; Metro Pavia Health failed to provide Mr. Herrera with a fall prevention program and/or safety instructions or protocol; *Docket 88, Second Amended Complaint, page 21, paragraph 87; failed to supervise Mr. Herrera as an invitee or contractor allowing him access to Susoni Health's premises into a dangerous condition without prevention warnings [Docket 88, Second Amended Complaint, page 21, paragraph 88* and that *Metro Pavia Health, as operator and/or contractor and/or consultant of the Susoni Health's premises, failed to maintain a reasonably safe condition for the use of its visitors and invitees or servicemen as Mr. Herrera. **[Docket 88, Second Amended Complaint, page 21, paragraph 89.***

Assessing the plausibility of liability of MPHS somehow requires a quantum inference to prove that somehow, MPHS had something to do with the fixed ladder where the plaintiff fell, or that it had a reasonable degree of control over the premises where the accident took place, or that it had any obligation, even indirectly, of providing a safe working environment to the plaintiff employed by RF Refueling under the supervision of Matthew Bargo, but working with sub-contractor Co-defendant Mr. Herrera, that was

servicing the diesel gas tank belonging to Fresenius which was located in the Hospital

Dr. Susoni in Arecibo, who happens to have a consulting agreement with MPHS.[5]

So implausible the claim is against MPHS, that the plaintiff has amended the

Complaint twice in order to bring other defendants for the same claim liability against

MPHS. Plaintiff had to plead facts plausibly showing that MPHS had responsibility for the

conditions of a fixed ladder and not a mere recitation of a conclusory pleading like "*MPHS

allowed for dangerous conditions in its owned premises and/or a breach of duty to provide

a safe commercial facility to invitees*."

MPHS cannot be liable for the damages alleged by Plaintiff as it did not violate any

duty owed to Plaintiff under the law. Plaintiff essentially repeats the same allegations

made against codefendant Dr. Susoni Health Community Service Corp. and the other co-

defendants. There is no justiciable controversy regarding that: MPHS is not owner of

Pavia Arecibo Hospital or its premises. Dr. Susoni Health Community Services Corp. and

MPHS are independent and separate legal entities, the exclusive owner and operator of

Pavia Arecibo Hospital is Dr. Susoni Health Community Service Corp. **[SUF 13]** MPHS

has never been licensed to operate health services facilities, as provided in Law 101 of

June 26, 1965, as amended. **[SUF 3]**

MPHS is a corporation that provides consulting and counseling services in multiple

areas such as: Human Resources, Marketing, Finance, Public Relations, Physical Plant,

Contracts, Information System and medical utilization. **[SUF 2]** On January 1, 2016,

MPHS as an independent contractor, subscribed a Consulting and Counseling Services

Agreement with Dr. Susoni Health Community Services d/b/a Hospital Pavia Arecibo.

---

[5] For reasons unbeknownst to MPHS, Fresenius, as owner of the tank being service by the Plaintiff is not yet a party to this lawsuit.

**[SUF 4]** It is firmly established that the contract does not constitute a delegation of the Hospital functions to MPHS. **[SUF 5]** It is at Pavia Hospital's full discretion to fully or partially accept or reject the recommendations received by virtue of the Agreement. **[SUF 6]** MPHS does not exercise any kind of control over Dr. Susoni Health Community Corp. decisions regarding Physical Plant or any other aspect in which counseling or consulting is provided. **[SUF 8]** Dr. Susoni Health Community Services is responsible for the operating cost, rights and obligations relating to its operations. **[SUF 9]** MPHS is not responsible for any possible act or omission of Dr. Susoni Health Community Corp. **[SUF 14]** MPHS is not responsible or liable for claims arising out of slip and falls or other accidents at Pavia Arecibo Hospital premises or claims arising out of Pavia Arecibo Hospital negligence, willful misconduct, or negligent performance of, or failure perform, any of its duties or obligations. **[SUF 16]** Dr. Susoni Health Community Services Corp., as the owner, administrator and operator of the Pavia Arecibo Hospital, is the corporation that could be held accountable for acts or omissions occurred at its premises. **[SUF 12]** MPHS is not and was not involved, in any way in the design, construction, or inspection of Pavia Arecibo Hospital fixed ladder. **[SUF 10]** Furthermore, Pavia Arecibo Hospital never required or request MPHS an assessment regarding the fixed ladder. **[SUF 7]** Hence, MPHS cannot be liable for alleged damages on premises which it does not own, operate or administer.

The Complaint fails to state a claim under which any remedy may be granted. The only allegation against MPHS is that it is jointly and severally liable for the sole reason that it provided consulting and advisory services as a contractor to Dr. Susoni Health Community Service Corp. **[Docket 88, Second Amended Complaint, page 3, paragraph 7.]** There is no controversy regarding that MPHS is an independent contractor

with a Consulting and Advisory Agreement with Dr. Susoni Health Community Services. That fact does not meet the burden to establish a Damages cause of action against MPHS. The Consulting and Advisory Agreement governs the terms and nature of the relationship between MPHS and Dr. Susoni Health Community Services and explicitly indicates that MPHS is not responsible for the operations, administration or obligations of Dr. Susoni Health Community Services. Specifically, it is an uncontested fact that MPHS was not involved, in any way in the design, construction, or inspection of Pavia Arecibo Hospital fixed ladder. **[SUF 10]** and Pavia Arecibo Hospital never required or request MPHS an assessment regarding the fixed ladder. **[SUF 7]** Therefore, as a matter of law MPHS cannot be jointly and severally liable for the liability or negligence of other codefendants.

## V. CONCLUSION

**WHEREFORE**, for all the foregoing reasons, it is respectfully requested for this Honorable Court that this second motion for summary judgment be granted and all claims against MPHS be dismissed, along with reasonable attorneys' fees and costs and such other relief as may be just.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 27th day of May, 2020.

| | |
|---|---|
| **s/ Krystel Sáez Merced**<br>USDC-PR No. 304412<br>E-mail: ksaez@metropaviahealth.com<br><br>**Metro Pavia Health System, Inc.**<br>PO Box 3180<br>Carolina, PR 00984<br>Telephone: 787.625.8763<br>Facsimile: 787.625.8543 | s/Roberto L. Prats Palerm<br>USDC-PR 210509<br>E-mail: rprats@rpplaw.com<br><br>**Metro Pavia Health System, Inc.**<br>**RPP LAW, P.S.C.**<br>American Airlines Building<br>1509 López Landrón St.<br>SAN JUAN, PR 00911<br>787.721.6010 |